STATE OF NEBRASKA, APPELLEE, v. NORMAN R. OLESON,
APPELLANT.

143 N. W. 2d 917

Filed July 8, 1966. No. 36227.

Kerrigan, Line & Martin and Raymond A. Jensen, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MURPHY, District Judge.

CARTER, J.

Defendant was convicted for driving a motor vehicle on the public highways in Dodge County, Nebraska, while under the influence of alcoholic liquor, contrary to section 39-727, R. S. Supp., 1963. Defendant was sentenced to pay a fine of $100 and costs, and ordered not to drive any motor vehicle on the public highways of the state for a period of 6 months. Defendant has appealed.

Defendant was arrested on February 6, 1965, while driving his automobile on U. S. Highway No. 77 about 3 miles north of Fremont. The testimony of the arresting patrolman is that he observed defendant's automo-

bile weaving from side to side across the centerline of the road. After the arrest defendant was given certain tests. He was unable to walk in a straight line, he was unable to balance himself in shifting his weight from one foot to the other, his breath gave off the odor of alcohol, his face was somewhat flushed, the pupils of his eyes were dilated, and his talk was slurred. A second patrolman came upon the scene during the giving of the tests, who corroborated the testimony of the first patrolman. On arrival at the county courthouse, similar tests were again made by the two patrolmen with the same results. A urine sample was taken and analyzed by a chemist having a permit from the State of Nebraska, qualifying him to make such tests. The test indicated an alcoholic content of .25 percent by weight. Defendant testified that he had been drinking, that he drank two Martinis, and that, in his opinion, he was not under the influence of intoxicating liquor at the time of his arrest. No contention is made that the evidence was insufficient to sustain the conviction.

It is the contention of the defendant that he was not properly advised of his rights when a urine sample was demanded for the purpose of making a chemical test thereof under the implied consent law. The test was administered at the direction of the arresting patrolman, as provided by section 39-727.03, R. S. Supp., 1963. The evidence shows that while taking the defendant into Fremont the patrolman inquired of the defendant if he was familiar with the implied consent law and, upon receiving a negative answer, advised him that by driving on a public highway he had given his implied consent to a blood, urine, or breath test. Defendant was also advised that he had a right to refuse but if he did refuse his driver's license could be suspended up to a year. He was also informed that the evidence could be used against him in court. He elected to give a urine sample and did so without objection. The objection made at the trial was that the failure of the patrolman to inform

the defendant he could have an additional test made by a physician or registered nurse of his own choosing has the effect of invalidating the test made. It is contended that the failure of the patrolman to inform the defendant as to this right invalidates the urine test and that it was therefore prejudicial error for the trial court to admit the result of the test in evidence.

It is not questioned that the patrolman correctly advised the defendant that he had impliedly consented to the giving of a blood or urine test. He also correctly advised the defendant of the consequences of his failure to comply. The arresting officer is not required to do more. The defendant was 64 years of age. He had been in the banking business for many years and was a man of more than average intelligence. The arresting patrolman testified that defendant asked for additional explanations of the implied consent law and the effect of a refusal twice after the first explanation to him. He indicated his understanding of the matter and voluntarily elected to comply by consenting to the urine test. He did not request a test by a physician of his own choice. While the statute does preserve his right to such additional test, it is declaratory of a right that has always been available. The patrolman was under no more obligation to advise the defendant that he could have an additional test by a physician of his own choosing than he was to inform him of his right to subpoena witnesses, to be confronted by his accusers, or not to testify without comment thereon by the prosecutor.

In Caldwell v. Commonwealth, 205 Va. 277, 136 S. E. 2d 798, the defendant complained that he was not informed he had the right to designate the physician who would take the blood sample, as the statute provided. In disposing of that question the court said: "There is no provision in the statute which expressly requires that the arresting officer advise the accused of his rights to request a test within a two-hour period; to have, if practicable, a physician of his own choice to extract his

blood, or to know the results of the test. These provisions are available to an accused but are merely directory, not mandatory, insofar as they apply to the arresting officer. We conclude that the failure of the trooper to inform defendant of the provisions of the statute complained of did not constitute a lack of compliance."

We conclude that where a police officer explains the statutory basis for his request for a blood or urine test, and the consequences of a refusal, the requirements of the statute imposed upon the arresting officer have been met. The defendant's tendered instruction, directing the jury to disregard the result of the chemical test if the arresting officer failed to advise defendant that he was entitled to an additional test by a physician of his own choosing, was properly refused.

Defendant contends that the trial court erred in refusing to give his requested instruction No. 1. The substance of the instruction is: If defendant requested an opportunity to consult with an attorney prior to the taking of a chemical test to determine the alcoholic content of the blood and such opportunity was not afforded him, the test was not to be considered for any purpose.

We point out that blood or urine tests can be effectively made only within a couple of hours after the consumption of liquor by the subject. Any delay could possibly defeat the purpose of the statute. The defendant in the case before us testified that on the way to the police station he said "that I would like to call my attorney" and received no answer, although he said the patrolman may have nodded his head. The patrolman does not remember that anything was said during the trip to police headquarters about calling an attorney. Upon arrival at police headquarters the tests were repeated and the sample of urine taken without a request for legal counsel. Later, as defendant was being lodged in jail, defendant requested permission to call his lawyer. Permission was granted and he talked by long distance telephone with his lawyer in a neighboring town.

The fundamental question here involved is whether or not want of legal counsel affects the validity of a urine or blood test, assuming that it was otherwise correctly made. We conclude that it does not.

A blood or urine test is not in a comparable class with confessions or incriminating statements. The voluntariness of such is the most important factor and, where they have been coerced after a prolonged period of detention, their validity becomes subject to serious question. But in the case of the blood or urine test, the consent to the test is implied when the defendant operates a motor vehicle on a public road. The giving of the sample pursuant to the statute does not involve a question of involuntariness, want of due process, or self-incrimination.

The arrest in the instant case was made at approximately 1:50 a.m. The defendant was permitted to call his attorney shortly after arriving at the police station, on defendant's first request then made. The request was not made until after the sample of urine had been furnished. But the taking of a sample need not be delayed until defendant contacts a lawyer or until his counsel appears. A contrary holding would in many cases defeat the purpose of the statute. Even if defendant's request for counsel was made while being taken to the police headquarters, opportunity to contact legal counsel at that time was not present. The first time thereafter that he requested counsel he was permitted to do so, a fact which he admits. In other words, he was permitted to telephone his attorney the first time he requested it, when it was possible to comply. But irrespective of the facts in the instant case, the validity of the test is not impaired. The privilege against self-incrimination is limited to the giving of oral testimony and does not extend to defendant's body, nor to secretions therefrom, nor to the introduction of the chemical analysis in evidence. Swingle v. United States, 151 F. 2d 512; United States v. Nesmith, 121 F. Supp. 758; Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021;

Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N. W. 2d 75, 88 A. L. R. 2d 1055.

We conclude that the validity of a sample of blood or urine under the implied consent law is not impaired by a request for legal counsel, or the failure of defendant's counsel to appear before the sample is taken. We do not, by this opinion, intend to impair the right of a defendant to counsel for the purpose of protecting his rights. Our holding, simply stated, is that a defendant loses no rights subject to protection by legal counsel when he is requested to and furnishes a sample of blood or urine for chemical analysis to be used as evidence against him under the implied consent law. The trial court was not therefore in error in refusing to give defendant's requested instruction No. 1.

Other questions argued in the briefs are either without merit or not assigned as error if merit they have, matters which we do not here decide.

AFFIRMED.