Margaret Mary J. Mangan, J.
This is a special proceeding (CPLR art. 78) by about “ 17,000 individually named ” police officers employed by the City of New York, for a judgment declaring that section 210 of the Civil Service Law (Taylor Law) is unconstitutional either on its face or as it has been applied to them, and annulling and vacating respondent’s determinations that they had violated the provisions of the statute resulting in forfeiture of tenure and the imposition of fines. The petitioners’ motion for an order approving the written stipulation between the parties dated November 16, 1972, severing * ‘ those causes of action contained in the [original] petition which raise only legal issues [First, Second, Third and Fourth] ” and asserting them in this separate special proeesding, is granted on consent (CPLR 407.)
The respondents are Harry I. Bronstein, as Director of Personnel and Special Assistant to the Mayor of the City of New York, John V. Lindsay, as Mayor of the City of New York, Abraham Beame, as Comptroller of the City of New York, Patrick V, Murphy, as Police Commissioner of the City of New York, and the City of New York. The Attorney-General of the State of New York has appeared in opposition to the petition (CPLR 1012, subd. [b]).
The petitioners were fined and placed on probation on or about June 18, 1971 for having engaged in an illegal strike — “ a work stoppage ” — during the period January 14 to 19,1971.
Article 14 of the Civil 'Service Law (Taylor Law) is generally familiar for its prohibition of strikes by public employees and imposition of designated penalties for violation (Civil Service Law, § 210, subds. 1, 2). The procedures for enforcing the law are less familiar and it is in this connection that the petitioners assert their grieyances. They allege in the first *631 cause of action that the statute is unconstitutional for authorizing a determination of culpability and imposition of penalties “ prior to giving petitioners notice of charges, and an oppotunity to be heard and to answer ”. They also contend that an unfair burden of proof is imposed by the statutory presumption that one absent from work without permission is engaged in a strike, and that the presumption itself is invalid. They allege further that there was inadequate notice of their right to object to the determination of culpability (second cause of action) and finally that there was an improper delegation of authority (third and fourth causes of action).
The second, third and fourth causes of action do not assert constitutional questions. These actions allege noncompliance with the statutory provisions for the enforcement of the Taylor Law.
The second cause of action alleges inadequacy of the notice given to the petitioners of their right to object to charges against them. The notice given was sufficient “ reasonably to convey the required information” (Mullane v. Central Hanover Trust Co., 339 U. S. 306, 314; 42 N. Y. Jur., Notice and Notices, § 7). Further, in view of the timely filing of objections thereto and there being no claim of prejudice, the issue of adequacy of notice is academic.
The third cause of action alleges an illegal delegation of authority by the respondent Mayor Lindsay to the respondent Bronstein to investigate and make determinations pursuant to section 210 of the Civil Service Law. Section 3 of the New York City Charter provides that the Mayor shall be the chief executive officer of the city and may by executive order, at any time, create such positions within his executive office as he may deem necessary to fulfill his duties. He may delegate specified functions, powers and duties to any member of said office “ except his power to act * * * as a magistrate ” (New York City Charter, § 3). By executive Order No. 32 dated January 21, 1971, the respondent Mayor Lindsay established within the office of the Mayor the position of.Special Assistant to the Mayor, designated the Personnel Director of the City of New York (respondent Bronstein) to occupy that position, and delegated to him the functions, powers and duties vested in the Mayor as chief executive officer pursuant to section 210 of the Civil Service Law. Section 210 (subd. [d]) requires the chief executive officer of the government involved to investigate and determine whether or not there has been a strike, the names of the employees striking and the dates they *632 were on strike, with the right in them to object and prove non-involvement. Where the .statute delegates power to a single executive head, the general rule is that ‘ ‘ the legislature, understanding the impossibility of personal performance, impliedly authorized the delegation of authority to subordinates”. (1 Sutherland, Statutory Construction' ,[4th éd.], § 4.14.) The New York City Charter prohibits delegation by the Mayor , of his power to act' as a Magistrate. Under section 28-b of the General Construction Law a Magistrate is a Judge of any court of this. State. The Mayor in all judicial determinations acts as a Magistrate. However he may delegate administrative functions, powers and duties and the delegation here to Bron-. stein was proper. The determinations required by section 210 of the Civil Service Law are administrative determinations (Casella v. Lindsay, N. Y. L. J., Feb. 17, 1972, p. 2. col. 5; see, also, Matter of Buffalo Teachers’ Federation v. Helsby, 35 A D 2d 318, 321). The Legislature specifically provided for review of the propriety of these determinations by way of special proceeding pursuant to .CPLB article 78 (Civil Service Law, § 210, subd. 2, par. [h]).
The fourth cause of action alleges that the respondent Bronstein improperly subdelegated his responsibilities to make determinations. Subdelegation is generally governed by the principle that “ if it is reasonable to believe the legislature intended a particular function to be performed by designated persons because of their special qualifications, then a subdelegation is invalid; but where no particular qualifications are necessary for the exercise of the function its exercise may be delegated to subordinate officials.” (1 Sutherland, Statutory Construction, [4th ed.], § 4.14). In this connection, the statutory provision for the appointment of a hearing officer where a question of fact is raised on objection, with his determination being binding on the chief executive officer (Civil Service Law, ■ § 210, subd. 2, par. [h]) militates against a reasonable belief by the Legislature that the chief executive officer is the only person qualified for the function.
Upwards of 18,000 affidavits of objection were interposed, and Bronstein designated independent attorneys to examine them, review the original determination of culpability and the proof offered in opposition thereto, and make recommendations including the necessity of a hearing. Petitioners admit these determinations were, ostensibly made by Bronstein and issued over his name. There was implicit power in Bronstein to do whatever was administratively necessary. However, *633 Bronstein denies that he subdelegated his power and this has • not been refuted by the petitioners. The presumption is that Bronstein properly discharged his duties (21 N. Y. Jur., Evidence, § 108)'.
Finally, there is the issue of due process raised in the first cause of action. The challenge is broadly based.
The petitioners contend, first, that the statutory presumption created by section 210 of the Civil Service Law* (subd. 2, par. [b]) violates due process. The presumption is “ an employee who. is absent from work without permission, or who abstains wholly or in part from the full performance of his duties in his normal manner without permission, on the date or dates when a strike occurs, shall be presumed to have engaged in such strike on such date or dates.” (Civil Service Law, § 210, subd. 2, par. [b]). “ Where, as here, the relation between the fact found and the. presumption is clear and direct, and is not conclusive, the requirements of due process are satisfied.” (Adler v. Board of Educ., 342 U. S. 485, 496). As to the related contention that the presumption creates an unfair burden of proof, if the presumption is easily rebuttable, then the burden is tolerable (People v. Kirkpatrick, 32 N Y 2d 17). There is no difficulty in overcoming the presumption and burden of proof by affidavit showing- any one of the excuses acceptable to the respondent, ranging from a death in the family to donating blood.
The petitioners further contend that there is an unfavorable bias in the law because the respondents are the triers of fact, assessors of fines, and beneficiaries of fines. The cases cited by the petitioners are inapposite. “ The combination of investigatory, prosecutory and quasi-judicial functions in a single administrative agency has been authorized by many statutes such as the Labor Law, Alcoholic Beverage Control Law, Vehicle and Traffic Law, and Insurance Law, and is not considered a denial of due process.” (Matter of Buffalo Teachers’ Federation v. Helsby, 35 A D 2d 318, 322, supra).
The petitioners’ remaining contention is that an adversary hearing is necessary prior to the imposition of any penalties in order to satisfy due process and that in any event summary enforcement was improper because the strike ended five months before penalties here were imposed.
The constitutionality of section 210 of the Civil Service Law and its predecessor statute (former section 108, repealed by L. 1967, ch. 392) has been upheld against repeated constitu *634 tional challenges (Pruzan v. Board of Educ. of City of N. Y., 9 N Y 2d 911; Matter of Di Maggio v. Brown, 19 N Y 2d 283; Matter of Lawson v. Board of Educ., 62 Misc 2d 281, affd. 35 A D 2d 878, app. dsmd. 28 N Y 2d 993, app. dsmd. 404 U. S. 907; Matter of St. Pierre v. Board of Educ., 40 A D 2d 71; Matter of Sanford v. Rockefeller, 40 A D 2d 82). In particular, the very procedure in section 210 of the Civil Service Law at issue here, providing for the right to object after determination of culpability and imposition of penalties, and for review of any adverse determination by an article 78 proceeding, has been upheld as satisfying due process (Matter of Zeluck v. Board of Educ., 62 Misc 2d 273, affd. 36 A D 2d 615, app. dsmd. 29 N Y 2d 749; Matter of Sanford v. Rockefeller, supra).
The petitioners rely on Fuentes v. Shevin (407 U. S. 67). It is significant to note Special Term in the Sanford case relied on Fuentes in declaring section 210 to be unconstitutional (70 Misc 2d 833). The Appellate Division reversed Special Term and distinguished Fuentes, which involved replevin actions affecting private interests, as not having any “ important governmental or general public interest justifying postponement of the due process right to an opportunity for a hearing until after seizure of the property ” (Matter of Sanford v. Rockefeller [3d Dept.], 40 A D 2d 82, 86).
Termination of the strike did not, in and of itself, affect the procedural methods of enforcement adopted here under section 210 of the Civil Service Law. No time limitation is prescribed for enforcement following a strike. However, the purpose of the statute is that ‘ ‘ penalties will be fairly imposed without unreasonable delay.” (Memorandum of the Senate Buies Committee, McKinney’s Session Laws, 1969, p. 2367). The respondent, Bronstein, was required to ‘ ‘ determine, on the basis of such further investigation and affidavits as he may deem appropriate, the names of the employees who committed such violation and the date or dates thereof ” (Civil Service Law, § 210, subd. 2, par. [d]). More than 21,000 policemen went on strike for one or more days during a six-day period from January 14 to January 19, 1971. Among other things to be investigated by Bronstein were 25,000 separate reports of the duties performed by eanh policeman during that period. Notice of violation of the law had to be given to each employee upon completion of the investigation. Probation immediately became effective upon the giving of notice of violation on or about June 18,1971 (Civil Service Law, § 210, subd. 2, par. [f]) and payroll deductions began 30 days thereafter (Civil Service Law, *635 § 210, subd. 2, par. [g]). Bach of the petitioners filed a timely objection and within two months Bronstein commenced issuing determinations dismissing objections. Thereafter, the petitioners commenced a special proceeding as provided in paragraph (h) of subdivision 2 of section 210 of the Civil Service Law for judicial review of these determinations.
Within the framework of the approved statutory procedures for objection and then review by special proceeding, the petitioners were afforded “ the right to a meaningful opportunity to be heard within the limits of practicality” (Boddie v. Connecticut, 401 U. S. 371, 379) and it cannot be said there was an unreasonable delay for administrative convenience.
Due process tolerates variances ip the form of hearing appropriate to the nature of the case (Boddie v. Connecticut, supra, p. 378). The requisites of due process following the strike by the petitioners who are public employees are met in the notice and hearing procedures provided in the administrative processes of subdivision 2 of section 210 of the Civil Service Law and the right of judicial review provided by paragraph (h) of subdivision 2 thereof.
Accordingly, it is declared that section 210 of the Civil Service Law is constitutional both on its face and as it has been applied to the petitioners and it is further declared that the statute was validly enforced.