OPINION OF THE COURT
Timothy J. Sullivan, J.
Can the two-for-one payroll penalty of the Taylor Law be imposed for those days in which a striking employee was in jail as a result of violating a back-to-work court order; or does the fact that the striker is in jail provide him with a defense for those days he is actually in jail? This is the novel issue confronting the court in this proceeding.
FACTS
On or about October 25, 1977 the petitioners were all found *193 guilty of criminal contempt by this court (Honorable Alvin R Ruskin, Presiding) pursuant to section 751 of the Judiciary Law for their willful violation of both a restraining order and a preliminary injunction.
Pursuant to said order, judgment and warrant of commitment, petitioners Joseph Barni, Elizabeth Tank, Abel Blattman, Gretchen Malley and Michael Dockwiller, all officers and teachers of the Lakeland Federation of Teachers (LFT), and Thomas Kavunedus, a teacher and member of the LFT’s negotiating committee, were each fined and remanded to the Westchester County Penitentiary on October 28, 1977, to begin serving a definite sentence of 30 days in jail. Petitioners Palmer and Greenstein, also teachers engaged by the respondent Board of Education of Lakeland Central School District of Shrub Oak, and leaders of the strike were fined $250 each and remanded as aforesaid but to serve a definite sentence of 15 days in jail. The penalties imposed were upheld on appeal to the Appellate Division.
By notice dated November 25,1977 the respondent William J. McPhee, superintendent of the district, determined that the petitioners had violated subdivision 1 of section 210 of the Civil Service Law (commonly known as the "Taylor Law”) by engaging in a strike on the school days between October 11 and November 8, 1977. Petitioners were all placed on probation for a term of one year and fined an amount equal to twice their daily rate of pay for each day or part that they were found to have been on strike by the superintendent.
Pursuant to their rights under section 210 (subd 2, par [h]) of the Civil Service Law they objected to the superintendent’s determination that they had been engaged in a strike and the further imposition of the penalties for the days on which they were incarcerated in the Westchester County Penitentiary.
By letter dated December 28, 1977 the superintendent dismissed petitioner’s objections and this instant proceeding pursuant to CPLR article 78 was thereupon commenced for an order and judgment declaring that respondents’ actions in deducting from petitioners’ compensation as teachers for being on strike an amount equal to twice their daily rate of pay for the days on which petitioners were incarcerated for violation of a back-to-work order was arbitrary, capricious and unlawful.
Respondents have moved to dismiss the petition pursuant to *194 CPLR 3211 (subd [a], par 7) and 7804 upon the ground that the petition fails to state a cause of action.
DISCUSSION
At the outset the court considers the procedural context of the proceeding before it. Respondents imposed the two days penalty for each one day the petitioners were incarcerated while the strike was going on in reliance on the presumption contained in section 210 (subd 2, par [b]) of the Civil Service Law which provides: "For purposes of this subdivision an employee who is absent from work without permission, or who abstains wholly or in part from the full performance of his duties in his normal manner without permission, on the date or dates when a strike occurs, shall be presumed to have engaged in such strike on such date or dates.”
Petitioners assert that such presumption is rebutted for those days in which they were incarcerated in the Westchester County Penitentiary pursuant to a warrant of commitment and therefore respondent McPhee’s actions in summarily dismissing the objections to his determination that the petitioners had engaged in a strike on the days they were incarcerated was arbitrary, capricious and unlawful.
In the opinion of this court, the petition does not state a cause of action. The only excuse tendered to rebut the statutory presumption is that the petitioners were incarcerated for certain of the days for which the two-for-one penalty is sought to be imposed. While at first blush this seemingly would rebut the afore-mentioned presumption, upon closer analysis it becomes clear that they were in jail as a result of their own willful flaunting of a lawful back-to-work order.
Petitioners urge that even if they were disposed to working during the strike they could not, as they were serving a definite sentence for contempt of court. This is not the case where, for example, an indefinite sentence is imposed upon a witness who, after being granted immunity, refuses to testify, and whose jail sentence terminates upon his agreeing to testify. Petitioners could not have purged themselves of their jail sentence by offering to return to work.
Respondents properly point out, however, that it is indeed well established that one must bear the consequences of his own willful conduct.
In the opinion of this court, to say that the petitioners are *195 not in jail of their own free volition is contrary to the facts as found by the Trial Court and by the Appellate Division in the contempt proceedings. The petitioners, leaders of the teachers strike in the Lakeland Central School District of Shrub Oak, were on strike from September 6, 1977 and violated public law, a preliminary injunction not to strike, and a court order directing them to go back to work. To baldly assert that they (the leaders) might have gone back to work (during the period they were incarcerated) while their followers were still walking the picket lines strains one’s credulity to the outer limits of reason. Furthermore, and more importantly, the petitioners here, while perhaps not wishing to go to jail, nevertheless took every action which would assure their incarceration. They knew from prior experience that willful violation of a court order would result in being jailed and that is exactly what happened.
The Appellate Division of this department has stated in Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers (42 AD2d 422, 427): "So long as it [the Taylor Law] is the law, no individual or group of individuals, no matter how well motivated, may, by breaking that law and thereafter willfully disobeying a court order to comply with it, complain if he or they are compelled to suffer the sanctions which in advance of their defiance they knew the law provided.”
As has been properly noted by respondents, the payroll deduction penalty (Civil Service Law, § 210, subd 2, par [g]) and the provisions for injunctive and contempt proceedings (§ 211) are both mandatory. Nowhere in the act is there the slightest indication that the provisions of section 210 (subd 2, par [g]) shall not be applicable where the provisions of section 211 and sections 750 and 751 of the Judiciary Law have been implemented. Any fair analysis of the cases decided under the so-called Taylor Law would show a reflection of an argument such as that here advanced (Caso v District Council 37, 43 AD2d 159; People v Vizzini, 78 Misc 2d 1040), and clearly reflect the strong public policy against strikes by public employees — with the sanctions set forth being designed to act as deterrents of such strikes and to bring about early termination when such strikes do occur. (Rankin v Shanker, 23 NY2d 111; City of New York v De Lury, 23 NY 175.)
In the Caso case the Appellate Division spoke of the dual deterrents and penalties permitted under the Taylor Law. The court said (p 161): "The Taylor Law provides that public *196 employees and their union may be punished for engaging in a strike, the employees by loss of pay at twice the daily rate of pay for each day’s involvement, the union by loss of its 'dues check-off’ right, and that the strike may be enjoined by the Supreme Court (Civil Service Law, §§ 210, 211). Further, in the event of violation of such an injunction, the striking employees and their union may be punished by ñnes for contempt of court, and the employees also jailed (Judiciary Law, §§ 750, 751).”
In the opinion of the court, any other interpretation would very possibly result in a greater monetary penalty being paid by the ordinary striking teacher* (on whom the two-for-one Taylor Law penalty would be imposed) when compared with the strike leaders who would have been fined $250. Petitioner’s interpretation would emasculate section 211 of the Civil Service Law and sections 750 and 751 of the Judiciary Law and furthermore, impose serious restrictions on the discretion of the courts in enforcing their orders.
Finally, the constitutional claims asserted in the petition are without merit. The provisions of the Taylor Law have withstood a wide variety of constitutional challenges including the claims made here of a denial of equal protection of the law and the deprivation of due process. (Matter of Sanford v Rockefeller, 35 NY2d 547, app dsmd sub nom. Sanford v Carey, 421 US 973; Matter of Lawson v Board of Educ. 62 Misc 2d 281, affd 35 AD2d 878, app dsmd 28 NY2d 993, app dsmd 404 US 907; Matter of Kiernan v Bronstein, 73 Misc 2d 629; Matter of Zeluck v Board of Educ. 62 Misc 2d 274; affd 36 AD2d 615, app dsmd 29 NY2d 749.)
CONCLUSION
In the opinion of this court, the impositon of the payroll deduction penalty was entirely warranted in this case and no facts were alleged in the petition which would have justified the superintendent ordering a hearing based on the objections filed by petitioners. As a matter of law the reason tendered for not appearing at work during the strike was properly rejected. *197 Accordingly, the petition should be dismissed with costs to respondents.

 Assume the hypothetical case of teachers earning $20,000 a year or $100 per day and a strike lasting 10 days. Assume further that the strike leader (also teachers) are fined $250, sentenced to 10 days in jail (the jail sentences being coterminous with the strike and six of the 10 days are school days). Application of petitioners’ argument would result in the ordinary strikers suffering a penalty of $1200 ($200 per day for six days) while the strike leaders pay only a $250 fine.