ROCKE D. FULMER, APPELLANT, V. HOLLY JENSEN, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, APPELLEE.

379 N.W.2d 736

Filed January 17, 1986.   Nos. 84-490, 84-544.

John S. Mingus of Mingus & Mingus, for appellant.

A. Eugene Crump, Deputy Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

The plaintiff, Rocke D. Fulmer, has appealed from the order of the district court affirming the order of the director of the Department of Motor Vehicles suspending his motor vehicle operator's license under the implied consent law.

The record shows that on September 1, 1983, Fulmer was approached by Gloria Martin, a Kearney, Nebraska, police officer who had just received a radio dispatch reporting a theft at the Holiday Inn. The dispatch identified a white El Camino-type vehicle as having been involved in the theft and that it had last been seen traveling northbound on Central Avenue. Shortly after receiving the radio transmission, Officer Martin observed the Fulmer vehicle, which matched the description and license plate number given in the radio dispatch. The Fulmer car was then located approximately 50 feet from the public roadway on private property with its headlights on.

As Officer Martin approached, she observed Fulmer and a woman in the vehicle. Fulmer, after producing his license and registration, was asked to return to the Holiday Inn to clear up the theft matter. Officer Martin testified that at this time she

was not aware that Fulmer might be under the influence of alcohol. She attributed his dullness and silence to the pending police investigation.

Fulmer agreed to return to the motel after being advised that his vehicle was suspected to have been involved in the theft. As Officer Martin followed Fulmer, she observed that he was driving very slowly and appeared not to know where he was going. She stopped him after he had passed both access roads to the motel. Upon approaching the vehicle, Officer Martin shined her flashlight in the window and observed a six-pack of beer on the floor. She also observed Fulmer's eyes to be bloodshot and watery, and noticed a strong odor of alcohol on his breath. When asked what the problem was, Fulmer responded that he was not from the Kearney area, although his driver's license indicated that he was. He was then asked to step from his vehicle, which he did with difficulty. After performing poorly· on three field sobriety tests, Fulmer was arrested for driving while intoxicated and transported to a detention center.

At the center Fulmer was read an implied consent advisement postarrest form. When he refused to submit to a test after signing the form, he was subsequently cited for the refusal.

A show cause hearing was held on October 20, 1983, before a hearing officer for the Department of Motor Vehicles. An order revoking Fulmer's motor vehicle operator's license for unreasonably refusing to consent to a body fluid test was entered on October 27, 1983.

On appeal the district court rejected Fulmer's claims that Neb. Rev. Stat. § 39-669.16 (Reissue 1984) is unconstitutional in placing the burden upon the appellant to prove that a refusal was reasonable and because there are no established guidelines as to what constitutes a reasonable refusal. The court then sustained the State's motion to dismiss the appeal, holding that Fulmer had not sustained his burden of showing that his refusal was reasonable. Fulmer's motion for new trial was overruled.

Fulmer's first claim on appeal is that the district court erred in refusing to hold that the appellee, Holly Jensen, had illegally delegated her quasi-judicial functions as the director of the Department of Motor Vehicles by allowing the deputy director to determine whether Fulmer's license should be revoked

pursuant to § 39-669.16. The appellant claims that Jensen may not delegate the power vested in her by § 39-669.16, because the power is quasi-judicial in nature and delegated solely to her.

The record shows that the show cause implied consent hearing was had before a hearing officer as provided by statute. The hearing officer then summarized the testimony from a tape recording and delivered a synopsis to the deputy director's secretary. The appellee, Jensen, testified that the decision whether to revoke Fulmer's license was delegated to the deputy director. However, the October 27, 1983, order revoking Fulmer's license, and the certificate of service attached thereto, both bear Director Jensen's signature.

Neb. Rev. Stat. § 60-1503 (Reissue 1984) specifically provides, "The Director of Motor Vehicles shall have authority to employ such personnel, including legal, and technical advisors as may be necessary to carry out the duties of his office." Director Jensen testified that the Department of Motor Vehicles reviews up to 1,600 implied consent cases a year, making it impossible for her to personally review every case.

The authority to delegate discretionary and quasi-judicial powers to agency subordinates is implied where the powers bestowed upon an agency head "are impossible of personal execution." 2 Am. Jur. 2d *Administrative Law* § 223 at 53 (1962). See, also, *Brown Group, Inc. v. Admin. Hearing Com'n*, 649 S.W.2d 874 (Mo. 1983); *Kiernan v. Bronstein*, 73 Misc. 2d 629, 342 N.Y.S.2d 977 (1973).

As stated in 2 Am. Jur. 2d, *supra* § 224 at 54-55: "[T]he law does not preclude practicable administrative procedure in obtaining the aid of assistants in the department, apparently to any extent so long as the agency does not abdicate its power and responsibility and preserves for itself the right to make the final decision." The authority of the director to delegate her implied consent revocation duties is fairly implied by § 60-1503. We conclude that the appellee director did not unlawfully delegate her responsibilities under § 39-669.16.

Fulmer next maintains that § 39-669.16 is unconstitutionally vague and ambiguous because a reasonable refusal is not adequately defined in the statute or in department regulations.

The constitutional requirement of reasonable certainty in

statutory language "is satisfied by the use of ordinary terms [to express ideas] which find adequate interpretation in common usage and understanding." *Roth v. School Dist. of Scottsbluff*, 213 Neb. 545, 548, 330 N.W.2d 488, 491 (1983). See, also, *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984).

In *Gleason v. Gleason*, 218 Neb. 629, 633, 357 N.W.2d 465, 468 (1984), we recognized the difficulty inherent in determining "reasonable" alimony, due to the fact that "[t]he standard of reasonableness by its very nature defies clear and specific quantification inasmuch as the determination of reasonableness is directly tied to the virtually unique circumstances of each case." The same can be said of the reasonableness of refusal determination. This court has previously noted that "an attempt to give a specific meaning to the word 'reasonable' is 'trying to count what is not number, and measure what is not space.' " *Altschuler v. Coburn*, 38 Neb. 881, 890, 57 N.W. 836, 838 (1894).

The term "reasonable," as applied to refusals to submit to a chemical test under the implied consent law, is an ordinary term which finds adequate interpretation in common usage and understanding. When the reasonableness standard is applied to specific circumstances, it provides an adequate guide to persons of ordinary intelligence.

Fulmer claims further that § 39-669.16 unconstitutionally delegates legislative power to the executive branch because the statute fails to define the term "reasonable." While the Legislature cannot delegate its lawmaking powers, it can make laws which "become operative on the happening of a certain contingency or on an ascertainment of a fact upon which the law intends to make its own action depend." *Lennox v. Housing Authority of City of Omaha*, 137 Neb. 582, 590, 290 N.W. 451, 457 (1940). This is what the Legislature did in enacting § 39-669.16, and, as such, the statute does not constitute an unconstitutional delegation of legislative powers.

Fulmer cites no authority to support his additional claim that the Administrative Procedures Act, Neb. Rev. Stat. ch. 84, art. 9 (Reissue 1981), requires that the appellee promulgate rules and regulations defining the term "reasonable" as used in

§ 39-669.16.

Additionally, there was no impropriety, as claimed by the appellant, in the hearing officer's destruction of the tape recordings of the implied consent hearings. Section 39-669.16 clearly provides that the appellee is empowered to appoint a hearing officer who is to report the evidence to the director. The tape recording is used for the limited purpose of assisting the hearing officer in making a written report to the director, and the recording is not required by statute to be a part of that report.

Fulmer next asserts error in the district court's failure to reverse the revocation order because the appellant was not given the *Miranda* warnings prior to the request that he submit to a chemical test, and because he was denied his sixth amendment right to counsel prior to his refusal.

We adhere to our previous determination that there is no requirement that *Miranda* warnings be given prior to a request to submit to a chemical analysis of blood, breath, or urine under the Nebraska implied consent law. *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). Evidence obtained in the implied consent context is not testimonial or communicative in nature and does not fall within the privilege against self-incrimination. *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State v. Manley*, 189 Neb. 415, 202 N.W.2d 831 (1972); *State v. Oleson*, 180 Neb. 546, 143 N.W.2d 917 (1966).

Also, we adhere to our previous holdings that under the implied consent law a driver is not entitled to consult with an attorney before submitting to a chemical test, nor is a delay in the test required due to a driver's request to consult with an attorney. See, *Bapat v. Jensen*, 220 Neb. 763, 371 N.W.2d 742 (1985); *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984); *Winter v. Peterson*, 208 Neb. 785, 305 N.W.2d 803 (1981); *Wiseman v. Sullivan, supra.*

Fulmer's final contention is that the revocation order should have been reversed because Officer Martin did not have probable cause to initially contact him and did not have reasonable grounds to request that he submit to a chemical test of his blood, breath, or urine.

Fulmer's challenge to the initial contact is without merit. Although Officer Martin, at the time of the first contact, may not have had probable cause to arrest Fulmer, Martin's approach was a permissible stop under the guidelines of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

In *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), the Court noted that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Acknowledging the elusive nature of the concept of cause sufficient to justify a stop, the Court outlined certain guidelines:

But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Cortez, supra* at 417-18. See, also, *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983). In this case it is clear that Officer Martin, acting on the facts learned through the radio dispatch, together with her own observations that Fulmer's vehicle was parked with its lights on near the road it was last seen traveling on after the theft, had a particularized and objective basis for suspecting that Fulmer was involved in the theft.

Fulmer attacks this conclusion, citing *State v. Benson*, 198 Neb. 14, 17, 251 N.W.2d 659, 661 (1977), where we held that "[a] reasonably founded suspicion to stop a vehicle cannot be based solely on the receipt by the stopping officer of a radio dispatch to stop the described vehicle without any proof of the factual foundation for the relayed message." The factual foundation in this case is supplied by the testimony that the other passenger in the Fulmer car was involved in the theft.

The claim that Officer Martin had no reasonable grounds to request Fulmer to submit to a chemical test is without merit. Neb. Rev. Stat. § 39-669.08(2) (Reissue 1984) provides:

Any law enforcement officer who has been duly authorized to make arrests for violations of traffic laws of

this state or of ordinances of any city or village may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor to submit to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her body fluid, when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle upon a public highway in this state while under the influence of alcoholic liquor.

We have interpreted this section to mean that reasonable grounds for arrest and arrest are conditions precedent to a valid request to submit to a chemical test. *Mackey v. Director of Department of Motor Vehicles*, 194 Neb. 707, 235 N.W.2d 394 (1975).

The appealing licensee has the burden to prove that the arresting officer did not have reasonable grounds to request a chemical test once the State has made out a prima facie case for revocation by affidavit to the Department of Motor Vehicles. *Mackey, supra*. From our review of the record de novo, we conclude that Fulmer did not satisfy that burden.

The record shows that Officer Martin made contact with Fulmer on private property shortly after a radio dispatch that a car like Fulmer's had been involved in a theft. Fulmer's license plate number matched that reported in the dispatch. Fulmer was parked with his headlights on in a driveway adjacent to the public roadway on which his vehicle had been reported to be traveling. These facts suggest that the appellant had been driving on the public roadway just prior to Officer Martin's initial contact.

In *State v. Lichti*, 219 Neb. 894, 367 N.W.2d 138 (1985), we held that under Neb. Rev. Stat. § 39-604(1) (Reissue 1984), a person driving in response to a lawful order by a law enforcement officer is engaged in privileged conduct for which he cannot be punished. While Officer Martin could not have based her request to Fulmer to submit to a chemical test solely on her observations of his driving after asking him to return to the motel, the facts at the time of her initial contact gave her

reasonable grounds to suspect that Fulmer had been driving on a public highway.

The second stop was initiated because Fulmer, by missing both access roads to the motel, had not complied with Officer Martin's lawful order. At that point the officer became cognizant of facts suggesting that Fulmer was under the influence of intoxicating liquor. There was a six-pack of beer on the floorboard of Fulmer's car, his eyes were bloodshot and watery, and when Officer Martin leaned into the car to ask why he had missed the exits, she detected a strong odor of alcoholic beverage about his breath. Fulmer responded that he had missed the exits because he was not from the area, although his license showed otherwise. He then had difficulty stepping from the vehicle and in performing three field sobriety tests. At that point we conclude that Officer Martin had reasonable grounds to conclude that Fulmer had previously been driving a vehicle while under the influence of intoxicating liquor and, therefore, properly requested the appellant to submit to a chemical test of his blood, breath, or urine.

There being no error, the judgment of the district court is affirmed.

AFFIRMED.