IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. YORK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
TRACY YORK, APPELLANT.

Filed October 15, 2013.    No. A-12-1061.

Appeal from the District Court for Scotts Bluff County, RANDALL L. LIIPSTREU, Judge, on appeal thereto from the County Court for Scotts Bluff County, KRISTEN D. MICKEY, Judge. Judgment of District Court affirmed.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Tracy York appeals his convictions for driving under the influence (DUI) and refusal to submit to a chemical test. On appeal, York asserts that the trial court erred in refusing to allow him to call a proffered witness, in failing to direct a verdict on the refusal charge, in failing to give a proposed jury instruction, and in denying a motion for mistrial. We find no merit to these assertions, and we affirm.

## II. BACKGROUND

The events giving rise to this appeal occurred on or about August 20, 2011, in Scotts Bluff County, Nebraska. Elizabeth Magelby testified that on that date she was a passenger in a vehicle driven by her husband when a pickup truck rapidly approached the rear of their vehicle and appeared as if it was going to strike their vehicle. She testified that this happened more than once and that she telephoned the 911 emergency dispatch number to report an erratic driver. The

- 1 -

truck eventually passed the Magelbys' vehicle, and they followed it. Elizabeth testified that she observed the truck drifting across the centerline--including drifting so far that all four tires crossed the centerline into the oncoming lane--and then correcting several times. She eventually observed a deputy sheriff stop the truck.

A Deputy Still testified that he responded to the 911 call. He testified that when he arrived in the area of the truck, he observed it drift off the pavement, then correct itself, and then drift into the oncoming lane of traffic, in which Still was driving. He testified that he pulled off the roadway to avoid being struck and that he then turned around and effected a traffic stop on the truck.

Upon making contact with the driver, identified as York, Still noted a strong odor of an alcoholic beverage. Still testified that York's speech was slurred, his face was flushed, and his eyes were bloodshot. Still also testified that York swayed from front to back when standing. According to Still, these indicators are consistent with intoxication.

Still then had York perform field sobriety tests. Still testified that he observed four indicators of impairment during York's performance of the "walk and turn" sobriety test, and that York failed the "one leg stand" sobriety test.

Based on all of his observations of York and York's performance on the field sobriety tests, Still formed the opinion that York had been driving under the influence, and he arrested York. Still recovered 15 full cans of beer and 1 bottle of beer in a cooler in the back of York's truck. Upon arresting York, Still transported York to the jail.

At the jail, Still read York a postarrest rights advisement form and requested York provide a breath sample. York would not provide a breath sample, and he requested that a blood test be performed. Still requested a breath sample multiple times, and York declined to provide one each time and made multiple requests for a blood test. Still advised York that he was not entitled to a blood test.

A complaint was filed in county court, charging York with DUI and refusal to submit to a chemical test.

Prior to trial, the State objected to York's indication that he intended to call a witness who had not previously been disclosed to the State by York. York acknowledged that he had not disclosed the witness during pretrial disclosures, but asserted that he was not obligated to do so because he had not requested the identity of the State's witnesses in his own discovery requests. The county court ruled that its pretrial order requiring disclosure would "stand" and indicated that York would not be allowed to call the witness during his case in chief, although he could call the witness in "rebuttal."

The county court conducted a jury trial on the charges against York. At the conclusion of the State's case, York moved for a directed verdict on the refusal charge, arguing that the State had failed to adduce sufficient evidence to demonstrate that the breath test requested by Still was a "chemical test" for purposes of the charge. The court overruled the motion, and York proceeded to present evidence in the form of his own testimony in his own behalf.

At the conclusion of the trial, York requested a jury instruction defining "reasonable grounds" as used in Neb. Rev. Stat. § 60-6,197(2) (Reissue 2010) as requiring probable cause that he was under the influence while he was driving. The court declined to give York's requested instruction.

During the State's rebuttal in closing arguments, the prosecuting attorney commented that York was "lucky . . . that a mini-van full of a mom and three or four kids wasn't killed." York objected, and the court sustained the objection and struck the comment. Later, after the jury was excused to deliberate, York moved for a mistrial based on the prosecutor's comment. The court denied the motion.

The jury returned verdicts of guilty on both charges. York appealed to the district court, which affirmed his convictions. This appeal followed.

## III. ASSIGNMENTS OF ERROR

York has assigned four errors on appeal. First, he asserts that the trial court erred in not allowing him to call a proffered witness. Second, he asserts that the court erred in denying his motion for directed verdict. Third, he asserts that the court erred in denying a requested jury instruction. Fourth, he asserts that the court erred in denying his motion for mistrial.

## IV. ANALYSIS

### 1. DENYING PROFFERED WITNESS

York first asserts that the trial court erred in not allowing him to call a proffered witness. He argues that he was not legally obligated to disclose the identity of his proposed witnesses because he had not sought comparable information from the State during pretrial discovery. Because York did not make an offer of proof to demonstrate what the proffered witness' testimony might have been, he has not demonstrated that the trial court committed any prejudicial error.

The common law recognized no right of discovery in a criminal case by either the prosecution or the defendant. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998). In Nebraska, the prosecution has not been granted a right of discovery except as permitted by the court, with limitations clearly defined by statute. *Id.* See, also, Neb. Rev. Stat. §§ 29-1916 and 29-1917 (Reissue 2008). Section 29-1916, for example, provides that whenever the trial court issues a discovery order granting the defendant a right to discovery from the prosecution, "the court may condition its order by requiring the defendant to grant the prosecution like access to comparable items or information included within the defendant's request."

In the present case, York filed a motion requesting discovery. In that motion, York did not request that the prosecution be ordered to disclose the names of any witnesses who would be called at trial. As such, pursuant to § 29-1916, the trial court could not condition a pretrial discovery order by requiring York to disclose the names of witnesses he intended to call at trial.

The State argues on appeal that we cannot review this assigned error because York did not include the trial court's pretrial discovery order in the record on appeal. However, that order either required York to disclose the names of witnesses--which, as noted above, would have been improper--or it did not require York to disclose the names of witnesses--in which case, the court could not have refused to allow York to call a witness for failure to disclose him prior to trial. In either case, the trial court erred in refusing to allow York to call a proffered witness on the basis of him not having disclosed the witness' name prior to trial.

Pursuant to Neb. Rev. Stat. § 27-103(1)(b) (Reissue 2008), Neb. Evid. R. 103(1)(b), error may not be predicated upon a ruling which excludes evidence unless a substantial right of the

party is affected, and the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). So, to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. *Id.* Further, that offer of proof must be made at trial, not in the course of pretrial proceedings concerning motions in limine. *Id.*

In the present case, following jury voir dire at the beginning of trial, the prosecutor objected to York's indication that he intended to call a "Mr. Dietrick," because the State had not previously received "any notice of who that is or where they live." York's counsel indicated that he planned on calling Dietrick and acknowledged that he "didn't put it in a pretrial" disclosure. When the court inquired why York had not identified the proffered witness in the course of pretrial discovery, York's counsel indicated first that he had not determined "until just recently" that he was going to call the witness, as he had been "developing a case theory," and indicated that he did not think he was required to disclose the witness' identity. The court then held that "the pretrial order [would] stand, absent any other showing at [that] point." The court held that "it is appropriate not to permit any further witnesses that [were] not disclosed."

During the pretrial discussion, York made no offer of proof concerning the proposed testimony to be elicited from the witness, and there is no indication in the record what the witness would have testified about. During trial, after the State rested, York moved for a directed verdict. After the motion for directed verdict was overruled, York's counsel indicated that "[p]ursuant to the court's order, I'm not calling . . . Dietrick, pursuant to the court's earlier order, and that's the reason why I'm not calling him." York made no offer of proof concerning the proposed testimony to be elicited from the witness, and there is no indication in the record what the witness would have testified about. After York testified in his own behalf, he rested. York again made no offer of proof concerning the proposed testimony, and there is no indication what the witness would have testified about.

On the record presented on appeal, we are unable to ascertain why York wanted to call the proffered witness, what testimony he could possibly have provided concerning the charges brought against York, or how not being allowed to call him could have prejudiced York's defense. As a result, we find this assignment of error to be without merit.

### 2. DENYING DIRECTED VERDICT

York next asserts that the trial court erred in denying his motion for a directed verdict on the refusal charge. Specifically, York asserts that the State failed to adduce sufficient evidence to demonstrate that the breath test requested by Still constituted a "chemical test" for purposes of the refusal charge. Because York adduced evidence after the court denied his motion for a directed verdict, he has waived any asserted error related to the court's ruling on the motion. Additionally, there was sufficient evidence to demonstrate that he refused the requested test.

In a criminal trial, after a court overrules a defendant's motion for a dismissal or a directed verdict, the defendant waives any right to challenge the trial court's ruling if the defendant proceeds with trial and introduces evidence. *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012). The defendant may challenge the sufficiency of the evidence for the conviction. *Id.*

In the present case, York's assignment of error specifically asserts that "[t]he Court erred in failing to direct a verdict on the charge of Refusal of a Chemical Test." The heading related to York's argument concerning this assignment of error specifically asserts: "The Failure to Prove the Test Refused Was a Chemical Test Requires the Court to Direct a Verdict." Brief for appellant at 10. York cited this court to relevant law concerning when a directed verdict is appropriate. The conclusion of York's argument concerning this assignment of error asserts that "the court should have directed a verdict on the refusal charge." *Id*. at 12.

The record indicates that at the conclusion of the State's case, York moved for a directed verdict on the refusal charge. At that time, there was substantial argument concerning York's assertion that the State had not proven that the test refused was a chemical test. The trial court denied that motion, and York proceeded to present testimony in his own behalf. To the extent York's assignment of error and argument asserts that the trial court erred in not granting his motion for a directed verdict at the end of the State's evidence, he waived the right to assert that alleged error when he elected to proceed with trial and testify in his own behalf.

At the conclusion of York's case, he again moved for a directed verdict. York did not indicate the basis for the motion, and there was not argument by either counsel. It is not apparent whether he was requesting a directed verdict on the refusal charge, the DUI charge, or both. York did not indicate that he was renewing his prior arguments concerning refusal. The court overruled the motion.

To the extent York's assertion on appeal is intended to challenge the court's failure to direct a verdict on the refusal charge at the end of York's case or to challenge the sufficiency of the evidence to prove that he refused a chemical test, the evidence adduced by the State demonstrates that the deputy, Still, made numerous requests of York to submit a breath test; that Still read York a postarrest chemical test advisement form specifically advising York that he was being required to submit to a chemical test of his blood, breath, or urine; and that York repeatedly refused to provide a breath sample. We find this assignment of error to be meritless.

### 3. DENYING REQUESTED JURY INSTRUCTION

York next asserts that the trial court erred in denying his requested jury instruction defining the term "reasonable grounds." Because the term "reasonable grounds" is a term capable of being understood by ordinary persons, and because the requested definition was not consistent with Nebraska law, there is no merit to this assignment of error.

Section 60-6,197(2) provides that a peace officer may require a person arrested "to submit to a chemical test or tests of his or her blood, breath, or urine . . . when the officer has reasonable grounds to believe that such person was driving . . . while under the influence." York requested a specific instruction to the jury defining the phrase "reasonable grounds" as used in this statute to mean that "a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed the offense of [DUI]."

York argued to the trial court, and argues to this court on appeal, that the phrase "reasonable grounds" as used in § 60-6,197(2) does not have an ordinary and everyday meaning and that the phrase "means probable cause." Brief for appellant at 13. We disagree with both assertions.

In *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986), the appellant challenged the constitutionality of former language in Nebraska's implied consent law providing that there would not be an administrative revocation of an operator's license if the refusal to submit to a chemical test was a reasonable refusal. See *State v. Boyd*, 242 Neb. 144, 493 N.W.2d 344 (1992) (noting that under implied consent law there could be no revocation if refusal to submit was reasonable under circumstances). The appellant argued that the language of the then-existing Neb. Rev. Stat. § 39-669.16 (Reissue 1984) was unconstitutionally vague and ambiguous because a "reasonable refusal" was not adequately defined in the statute or in the Department of Motor Vehicles regulations. *Fulmer v. Jensen*, 221 Neb. at 585, 379 N.W.2d at 739.

The Nebraska Supreme Court held that the constitutional requirement of reasonable certainty in statutory language is satisfied by the use of ordinary terms to express ideas that find adequate interpretation in common usage and understanding. *Fulmer v. Jensen, supra*. The court noted that "'[t]he standard of reasonableness by its very nature defies clear and specific quantification inasmuch as the determination of reasonableness is directly tied to the virtually unique circumstances of each case.'" *Id*. at 586, 379 N.W.2d at 739, quoting *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984). The court also noted that "'an attempt to give a specific meaning to the word "reasonable" is "trying to count what is not number, and measure what is not space."'" *Fulmer v. Jensen*, 221 Neb. at 586, 379 N.W.2d at 740, quoting *Altschuler v. Coburn*, 38 Neb. 881, 57 N.W. 836 (1894).

In the specific context of refusals to submit to chemical tests under the implied consent law, the Nebraska Supreme Court held that the term "'reasonable,' . . . is an ordinary term which finds adequate interpretation in common usage and understanding." *Fulmer v. Jensen*, 221 Neb. at 586, 379 N.W.2d at 740. "When the reasonableness standard is applied to specific circumstances, it provides an adequate guide to persons of ordinary intelligence." *Id.*

The Nebraska Supreme Court's holding in *Fulmer v. Jensen, supra*, suggests that the phrase "reasonable grounds" in § 60-6,197(2), concerning criminality of refusal to submit to a chemical test under the implied consent law, is an ordinary term and provides an adequate guide to persons of ordinary intelligence. It is not a term that requires a separate definition to adequately guide the jury's determination.

In support of his assertion that the phrase should be defined as being consistent with probable cause, York cited the lower court to *State v. Hisey*, 15 Neb. App. 100, 723 N.W.2d 99 (2006). Our reading of that case, however, does not suggest that it in any way indicates that the phrase "reasonable grounds" in § 60-6,197(2) is consistent with probable cause. Rather, the court in that case discussed the concept of probable cause to support an arrest, including that the concept of probable cause is determined by an objective standard of reasonableness.

York has not demonstrated that his proffered instruction was warranted or necessary, and he has not demonstrated that his proffered instruction was a correct statement of the law. See *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013) (to establish reversible error from court's refusal to give requested instruction, appellant has burden to show tendered instruction warranted and correct statement of law). This assignment of error is without merit.

## 4. DENYING MOTION FOR MISTRIAL

Finally, York asserts that the trial court erred in denying his motion for mistrial based on a comment made by the prosecuting attorney during his rebuttal closing argument. Because York did not present us with all of the closing arguments presented in this case, we cannot discern whether the prosecutor's comment was in response to anything argued in York's own closing argument. Because the trial court granted the objection and ordered the comment stricken, York has not demonstrated prejudice from the court's denial of his motion for mistrial.

Whether to grant a motion for mistrial is within the trial court's discretion, and this court will not disturb its ruling unless the court abused its discretion. *State v. Dixon*, 286 Neb. 334, ___ N.W.2d ___ (2013). A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters. *Id.*

Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *Id.* In brief, a mistrial is granted when a fundamental failure prevents a fair trial. *Id.*

In the present case, York asserts that he was entitled to a mistrial, because during rebuttal closing argument, the prosecutor stated that York "truly is lucky that he wasn't killed, that a mini-van full of a mom and three or four kids wasn't killed." York immediately objected, and the court sustained the objection and ordered the comment stricken.

Our review of this assertion of error is somewhat limited in this case, because York did not present us with a record of his counsel's closing argument. The record presented to us includes the State's initial closing argument and the State's rebuttal argument, but according to the bill of exceptions presented to us, "[York's] closing statements . . . were not requested as part of this bill of exceptions." A review of the praecipe for bill of exceptions filed with the trial court indicates that York requested the bill of exceptions include the trial "excluding opening statements, [York's] closing statements and voir dire." As a result, it is impossible for us to ascertain whether the objected-to statement by the prosecutor might have been in response to some argument or statement made by York's own counsel during his closing argument.

In any event, the trial court sustained York's objection and ordered the statement stricken. There is no demonstration to this court that the statement was so damaging that it prevented a fair trial, that it was an egregiously prejudicial statement, that a substantial miscarriage of justice actually occurred, or that there was a fundamental failure preventing a fair trial. Indeed, the actual evidence adduced demonstrated that York's truck, on multiple occasions, drifted across the centerline so that he was driving entirely in the oncoming lane and that there was traffic on the road at the time. The deputy, Still, testified that he actually left the road entirely to avoid being struck by York's truck. York has not demonstrated prejudice warranting a finding of reversible error from the court's denial of his motion for mistrial, and this assignment of error is without merit.

## V. CONCLUSION

We find no merit to York's assignments of error. We affirm.

AFFIRMED.