STATE OF NEBRASKA, APPELLEE, V. JOSEPH DAVIS, APPELLANT.
438 N.W.2d 772
Filed April 21, 1989. No. 88-379.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and NORTON, D.J., and RONIN, D.J., Retired.

Hastings, C.J.

The defendant, Joseph Davis, was convicted by a jury of theft by receiving stolen property. He was sentenced to a 1-year term of imprisonment. He appeals to this court and assigns as error that (1) the court overruled his motion to suppress physical evidence; (2) the court overruled his motion to suppress statements given by him to the police; and (3) there was insufficient evidence to support the conviction. We affirm.

On September 1, 1987, a diamond ring worth approximately $1,950 was stolen from Takechi's jewelry store in Omaha. Kevin Phillips admitted to the theft and told police that he and his brother Michael had sold the ring to a man named Joe. Police accompanied Kevin to Joe's neighborhood, and Kevin pointed out the house where Joe and his parents lived. Officer Bruce Ferrell, an investigating officer, requested the name of the owner of the home, and was informed over police radio that it was Ollie Davis. Upon hearing this, Kevin advised Officer Ferrell that Joe's last name was Davis.

A search warrant was obtained for the search of the premises on the strength of an affidavit of John W. Ewing, an Omaha police officer. The stolen ring was found in a dresser drawer in the defendant's bedroom. The defendant was not at home at that time.

Officer Ferrell subsequently informed Officer Timothy Andersen and others that he was looking for a burglary suspect, a black male driving a green or brown Jaguar with "in transit" signs. While on patrol, Officer Andersen spotted a car matching this description. The defendant was the driver of the car. Officer Andersen stopped the car and checked the in transit signs, which were proper, and also examined the defendant's identification papers. He then ran a check on the defendant with police headquarters and found that he matched the description of a person who had a felony warrant on file from another state. Accordingly, Officer Andersen took the defendant into police headquarters.

After taking the defendant's fingerprints and checking with New York authorities, it was discovered that the defendant was not the man wanted by that state. However, in the meantime Officer Andersen had been in touch with Officer Ferrell, and

the latter stated that he wanted to talk to the defendant. Andersen asked the defendant to remain at police headquarters, and although he conceded that the defendant would not have been free to leave had he wanted to, Andersen testified that the defendant agreed to wait.

The defendant was advised of his rights and agreed to waive them and to talk to the officer. The defendant eventually made a statement to the police admitting that he had purchased the ring from two men for $200. He did not admit that he knew the ring had been stolen. However, Kevin Phillips testified at trial that he had asked the defendant for $300 or $400 for the ring, but that the defendant "said — He said he would give me two for it, you know, so that if we didn't, you know, the — like if the cops watch us, you know, something we wouldn't get busted with it or nothing like that."

Before trial, defendant's counsel moved to suppress the results of the search (the ring) and the defendant's statement. Following a hearing on the motions, they were overruled.

From an examination of the record, including the affidavit for the search warrant and the testimony at the suppression hearing, there appears to be little doubt but that the warrant was issued upon probable cause. However, we need not belabor a discussion of that issue. At trial, the ring was offered in evidence, and upon a statement by defense counsel that he had no objection, it was received. In order to preserve a question concerning the admissibility of evidence for review on appeal, it is necessary to object at trial to the admission of evidence even though it was earlier considered at a hearing on a motion to suppress, which motion was overruled. *State v. Sock*, 227 Neb. 646, 419 N.W.2d 525 (1988).

Regarding the statement made to the police, the defendant argues that there was no basis for suspecting him of criminal activity so as initially to stop the defendant's car and that his statements were the fruits of a custodial interrogation that was the direct result of a warrantless and unlawful arrest.

The defendant concedes that the initial stop of his car was more in the nature of an investigatory stop than an arrest, and thus the officer did not need probable cause to detain him. He cites *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987), as

authority for the proposition that an investigatory stop must be justified by an objective manifestation that the person stopped has been, is, or is about to be engaged in criminal activity. The defendant asserts that Officer Andersen had no objective basis for suspecting the defendant of criminal activity.

The standard for investigative stops was recently set forth by this court in *State v. Kuil, ante* p. 62, 64, 434 N.W.2d 700, 702 (1989):

> A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. [Citations omitted.] In *State v. Kavanaugh*, 230 Neb. 889, 434 N.W.2d 36 (1989), we stated that police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior.

See, also, *State v. Thomte, supra.*

The Nebraska statutes also provide for investigatory stops. Neb. Rev. Stat. § 29-829 (Reissue 1985) states in part: "A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address, and an explanation of his actions."

The problem is what, and how much, information is sufficient to create a particularized and objective basis for suspecting that the person stopped has been involved in criminal activity. Some of our opinions seem to have lacked consistency in this area.

In *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977), *cert. denied* 434 U.S. 833, 98 S. Ct. 117, 54 L. Ed. 2d 93, a state patrolman heard a radio broadcast from the local sheriff's office requesting officers to watch for a white or cream-colored van with California plates pulling a U-Haul trailer. Shortly thereafter, the patrolman observed such a vehicle and, upon

communicating with the sheriff's office, was told that that office wanted the vehicle stopped and checked for a possible involvement in a theft. Although the stop was upheld on other grounds, this court stated that

> the radio message standing alone does not furnish legal cause for the detention . . . . If this case rested solely upon the foundation of the radio message to Officer Hogue with no evidence or proof that a factual foundation for the message existed, the legality of the detention here could not be supported.

198 Neb. at 17, 251 N.W.2d at 661.

In *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988), the officer was informed by radio that a blue pickup truck with a specified license number had scraped a railing on the viaduct. The officer subsequently observed a blue pickup truck with that license number, which he followed for some distance. During that time he observed the truck's driver commit numerous traffic violations. The court upheld the stop, finding that the officer had the requisite "articulable basis or reasonable suspicion," which was "justified by an objective manifestation," to make the stop. However, this court pointed out that the stop was appropriate because the officer observed improper operation of the vehicle with his own eyes. "It is noteworthy that [the officer] did not stop Beerbohm's automobile as soon as he located it, based solely upon the information relayed to him by radio." *Id.* at 444, 427 N.W.2d at 79.

In *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986), the officer received a radio dispatch reporting a recent theft and identifying a white El Camino-type vehicle as having been involved. Shortly afterward, the officer spotted the defendant's vehicle, which matched the description and license plate number given in the radio dispatch. The court found that the investigating officer had a "particularized and objective basis" for suspecting the defendant of criminal activity and making the initial investigatory stop. The court distinguished the admonition contained in *State v. Benson, supra*, that " '[a] reasonably founded suspicion to stop a vehicle cannot be based solely on the receipt by the stopping officer of a radio dispatch

to stop the described vehicle without any proof of the factual foundation for the relayed message,' " *Fulmer v. Jensen, supra* at 588, 379 N.W.2d at 741, stating that the factual foundation in this case was "supplied by the testimony that the other passenger in the [defendant's] car was involved in the theft." *Id.*

This court also upheld an investigatory stop based on information that the stopping officer received from another person in *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988). In that case, the officer was approached by an employee of a nearby gas station, who informed the officer that the driver of an automobile across the street had just driven over a curb and smelled strongly of alcohol. The officer followed the vehicle for a short distance, without observing any traffic violations, and then stopped the vehicle. The defendant, who was subsequently convicted of driving while intoxicated, argued that the initial stop was unlawful.

The court held that the officer had a reasonable basis, supported by specific and articulable information, upon which to stop the defendant's vehicle. The court stated that the factual basis for the stop need not arise from the officer's personal observation of criminal activity, but may be supplied by information acquired from another person if that information contains sufficient indicia of reliability.

In the same vein, the court in *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986), comments on the effect of information received by other police officers.

> Probable cause to seize an individual exists at the moment the collective knowledge and trustworthy information of all the police officers engaged in a common investigation are such as to warrant a conclusion by a prudent person that the individual seized committed a felony. . . . It is not required that an officer see the commission of the felony . . . ."

*Id.* at 118, 382 N.W.2d at 347.

In this case, Officer Andersen was entitled to rely not only on his own knowledge and observations of the defendant, but upon the collective knowledge of the entire police force involved in the investigation. *State v. LaChappell, supra.* Officer Ferrell had information from the man who stole the

ring that the ring had been sold to a black man who lived in the 1400 block of Emmet Street and who drove a green or brown Jaguar with in transit signs on it. His transmittal of this information to Officer Andersen gave Officer Andersen a reasonable and articulable basis to suspect that the driver of the Jaguar with in transit signs had been engaged in criminal activity and, thus, gave him justification for an investigative stop. " '[T]he essence of all that has been written [concerning the concept of cause sufficient to justify a stop] is that the totality of the circumstances—the whole picture—must be taken into account. . . .' " *Fulmer v. Jensen, supra* at 588, 379 N.W.2d at 741, quoting *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

In *State v. DeJesus*, 216 Neb. 907, 347 N.W.2d 111 (1984), the court referred to *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982), in holding: "A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time." *DeJesus, supra* at 914, 347 N.W.2d at 116. *Longa* explains at 363, 318 N.W.2d at 738: " 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.' "

"The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of routine investigation, and any incriminating evidence which comes to that officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest."

*State v. Donald*, 199 Neb. 70, 77, 256 N.W.2d 107, 111 (1977); *State v. Irwin*, 191 Neb. 169, 214 N.W.2d 595 (1974).

The initial stop of the defendant's car was justified under the totality of the circumstances. Officer Andersen knew the defendant was wanted for questioning for his involvement in a theft, and, given the information he possessed as a result of that furnished by Officer Ferrell, his suspicion of the defendant was reasonable.

The defendant argues that even assuming the initial stop of his vehicle was lawful, it was unreasonable for Officer Andersen to take him into custody for further checking on the felony warrant. Furthermore, he argues, even if there was reason to believe the defendant was wanted for a felony in New York, after he was cleared of any involvement in that felony, the police did not have sufficient information to justify detaining him further.

After having received reliable information that the defendant fit the description of the man wanted on the felony warrant from New York, the officer would have been derelict in his duty had he not brought the defendant in. Defendant's argument in this regard is totally without merit.

The police had sufficient articulable reasons constituting probable cause for holding the defendant pending questioning as to the receiving of stolen property. One of the persons involved in stealing the ring showed the police where the defendant lived, told police that the defendant had bought the ring, and gave the officers a description of the defendant and his car. This information was confirmed when the ring was found hidden in the defendant's room, and the defendant was found in the neighborhood of the house which Phillips had pointed out as being the defendant's and was driving a car which matched the description given by Phillips. In the language of *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987), the facts and circumstances within the officer's knowledge and of which he had reasonable trustworthy information were sufficient to warrant a person of reasonable caution to believe that an offense had been committed. That is, there was probable cause to detain the defendant even after he had been cleared of the New York felony.

Beyond that, the fact remains the officer testified that the defendant voluntarily agreed to stay at police headquarters until Officer Ferrell arrived to question him. At a hearing to suppress evidence, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. In reviewing a court's ruling as the result of a suppression hearing, the Supreme Court will not reweigh or resolve conflicts in the evidence, but will uphold the

trial court's findings of fact unless those findings are clearly wrong. *State v. Sutton, ante* p. 30, 434 N.W.2d 689 (1989).

Regarding the third assignment of error, pertaining to the sufficiency of the evidence to convict the defendant, it is undisputed that the ring was a stolen ring. It was found in the dresser drawer in the defendant's bedroom and was hidden under a bunch of socks. Additionally, Phillips, one of the thieves, testified that when the defendant made the lower offer to purchase the ring, he talked in terms of taking the ring off their hands so that "if the cops watch us . . . we wouldn't get busted with it or nothing like that."

In determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Quiring*, 230 Neb. 535, 432 N.W.2d 243 (1988).

The judgment of the district court is affirmed.

AFFIRMED.