STATE OF NEBRASKA, APPELLANT, V. CHARLES T. HOUSER, APPELLEE.
450 N.W.2d 697

Filed January 26, 1990.   No. 89-1220.

Ronald L. Staskiewicz, Douglas County Attorney, Robert Francis Cryne, and S. W. Cooper for appellant.

Donald W. Kleine, of Kleine Law Office, for appellee.

HASTINGS, C. J.

This is an appeal brought by the State through the county attorney for Douglas County for review by a single judge of this court, pursuant to Neb. Rev. Stat. § 29-116 (Reissue 1989), of certain rulings of the trial court in suppressing statements made by the defendant.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Juhl, ante* p. 33, 449 N.W.2d 202 (1989). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding such motion to suppress. *Id.*

Whether an item of evidence, although relevant, is excludable on account of the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay in the proceedings, waste of time, or needless presentation of cumulative evidence, see Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1989)), may depend on a trial court's exercise of judicial discretion. *State v. Juhl, supra.*

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

On Tuesday, September 27, 1988, Omaha police officers received a call regarding a missing person, namely, Janice Ross Patterson, the victim. In following up on this call, police determined that the defendant was the last person to see the victim alive. The defendant was the victim's boyfriend.

At approximately 8:15 that evening police officers went to the defendant's apartment to inquire as to his knowledge of the

victim's whereabouts. The statements made during this initial interview were not suppressed and are not in dispute in these proceedings. During the interview, the defendant stated that the last time he had seen the victim was Monday, the day before.

At some point during the interview the officers received word that the victim's car had been located in the "No Frills" parking lot. The officers left defendant's residence and proceeded to the parking lot. The defendant, of his own accord, later drove to the parking lot.

A substance that appeared to be blood was located in the trunk of the victim's car. After defendant arrived, Officer Foxall obtained defendant's consent for a search of both defendant's car and his apartment and then conducted those searches. Defendant rode with police officers to his apartment for the search. During the search, certain items were seized by the officers.

Defendant was asked if he would voluntarily accompany the police officers to a police station for further questioning. There is no dispute as to the voluntary nature of this arrangement. Defendant arrived at the station house at approximately 11 p.m. and was taken to a small room with no windows, located on the fourth floor.

Defendant remained in the interview room for some time until the questioning began. There is conflicting evidence as to whether he was locked in the interview room. Officer Butler and the defendant himself testified at the suppression hearing that the door was locked. Officer Foxall testified that it was not locked.

About 12:30 a.m. on September 28, 1988, the defendant was questioned by Officers Foxall and Sklenar. Defendant was not notified of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). This period of questioning lasted until about 1:30 a.m., when the officers took a break and consulted with Lieutenant Roberts and Sergeant Fricke. Statements made during this period of questioning were suppressed, the trial court holding that the interview was a custodial interrogation because of a significant deprivation of defendant's freedom and action and that *Miranda* warnings should have been given.

After the discussion with Roberts and Fricke, it was determined that a rights advisory form which advises a person of his or her *Miranda* rights should be obtained.

Those warnings were given the defendant at approximately 1:36 a.m., and Officers Foxall and Sklenar commenced another round of questioning. This round of questioning lasted until about 2:17 a.m., ending when defendant requested a lawyer. Statements made during this stage of questioning were not suppressed.

After requesting a lawyer, the defendant was provided a telephone book and access to a telephone. About an hour later, he was taken by Investigator Briese to the criminalistics area on the first floor of the police station, where hair samples and fingernail clippings were taken. No permission was obtained from the defendant. Briese knew that Officers Foxall and Sklenar had interviewed defendant earlier and also knew of defendant's request for a lawyer.

In any event, Briese then obtained a written permission to search from defendant after explaining to the defendant his rights in that regard. Apparently, the consent to search was suggested by the police investigator. However, as a condition of signing the consent form, the defendant requested permission to accompany the police on the search, which consent was given.

Officers then transported defendant back to his apartment. The second search of his apartment lasted approximately 3 hours. The police witnesses themselves did not agree as to whether defendant was required to stay in the police car at all times or whether, as testified to by one officer, defendant was allowed to open the door of the apartment. In any event, according to Officer Lenker, the defendant sat with him in the police cruiser during the time the search was made. Lenker said he did not interrogate defendant. It was during this period of time that the defendant spoke to a friend of his by the name of Carolyn White. The police officer also spoke to her.

The substance of the conversations among Officer Lenker, the defendant, and Carolyn White are not found in the record. Therefore, the record is silent as to which comments are in response to questions and not voluntarily made, or which

comments are admissible. However, the district court suppressed the answer to any question asked by Lenker while in the cruiser on the grounds that defendant's request for counsel made earlier that morning was too proximate in time to permit into evidence any statements not freely made.

At some point during the time the defendant was in the cruiser with Officer Lenker, the defendant volunteered to take a polygraph test. According to Officer Lenker, this resulted from a conversation had with the defendant at the time, when the defendant said, "[Y]eah, I would like to clear myself out of this matter," and Lenker then asked if he would be willing to take a polygraph test. After receiving an affirmative answer, Lenker made arrangements to have the test administered at 4 p.m. that day and to have a police officer transport defendant to where the test was to be administered.

Officer Circo conducted the polygraph test, which lasted approximately 2 hours. Prior to the test, the defendant was informed of his constitutional rights and signed a polygraph rights advisory form. The record does not reveal specifically what statements were made during the test; however, during the test Circo asked questions about the victim's disappearance, including questions worded in an accusatory fashion. According to Circo, no inculpatory statements were made.

Although finding no constitutional defects in the voluntary statements made by defendant during the test, the district court ruled the statements were inadmissible. The basis for this holding was stated by the trial court to be that the results of a polygraph test, or even the fact that a polygraph test was taken, are inadmissible, and the probative value of any such evidence would be outweighed by the danger of unfair prejudice or confusion under the provisions of § 27-403.

After the polygraph test, the defendant was turned over to Officer Skanes. At approximately 7:30 p.m. Officer Skanes, pursuant to an assignment received from Sergeant Fricke, began to interview the defendant. At the suppression hearing Officer Skanes stated: "Prior to speaking to him, I asked him if he was aware of his constitutional rights per Miranda and he replied that he was. . . . I didn't read him a form because he had just completed a polygraph examination." The officer also

stated he explained to the defendant that the same rights applied to the questions he was about to ask as applied during the polygraph test. The defendant testified that he did not remember those remarks being made to him.

The district court suppressed any responses to questions asked by Officer Skanes during this interview. With respect to the officer's reference to the fact that defendant had earlier received *Miranda* warnings, the district court determined that in light of the totality of circumstances such a casual reference to the defendant's critical rights was unacceptable.

Later, the defendant was arrested and charged with first degree murder. This suppression hearing resulted.

The State assigns as error (1) the finding that the initial interview at the station house before *Miranda* rights were given was a custodial interrogation; (2) the holding that statements made to Officer Lenker or made to others in the presence of Officer Lenker while the defendant was in the cruiser during the search were not voluntary or were in response to custodial interrogation; (3) the holding that statements made during the polygraph test were to be suppressed; and (4) the holding that following the polygraph examination, Officer Skanes was required to again give the defendant his *Miranda* warnings.

The first, second, and fourth errors assigned challenge the district court's application of fifth amendment self-incrimination analysis to the facts at hand. The third error assigned relates to a statutory issue, is not a question of constitutional dimension, and will be discussed later.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), forbids the introduction into evidence of a defendant's statement made during a "custodial interrogation" unless appropriate warnings are first given. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). The record is clear that *Miranda* warnings were not given to the defendant prior to the round of station house questioning beginning at about 12:30 a.m. on September 28, 1988, and lasting for approximately 1 hour.

Therefore, the question becomes one of whether this was a custodial interrogation. *Miranda* defined custodial interrogation as "questioning initiated by law enforcement

officers after a person has been taken into custody or *otherwise deprived of his freedom of action in any significant way.*" (Emphasis supplied.) 384 U.S. at 444.

The district court determined that the defendant was deprived of his freedom of action in a significant way. The State contends that this finding of fact is clearly erroneous.

This court, in considering custodial status, has noted that the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *State v. Bowersmith,* 224 Neb. 6, 395 N.W.2d 527 (1986); *State v. Saylor,* 223 Neb. 694, 392 N.W.2d 789 (1986), *cert. denied* 481 U.S. 1038, 107 S. Ct. 1975, 95 L. Ed. 2d 815 (1987).

At a hearing to suppress evidence, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. In reviewing a court's ruling as the result of a suppression hearing, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless clearly wrong. *State v. Davis,* 231 Neb. 878, 438 N.W.2d 772 (1989).

There is conflicting evidence as to whether the defendant was in custody at this period of time. It is sufficient to note that there is ample testimony to support the finding of a custodial status. Under our standard of review, and given the circumstances that existed, it cannot be said that the district court was clearly wrong in deciding that the interview was custodial.

As to whether an interrogation was conducted, the record does not disclose the questions and answers complained of. Therefore, it is sufficient for us to note that if answers were given as a result of questions propounded during the period defendant was in custody, the district court was not clearly wrong in suppressing them.

We deal next with the statements made by the defendant in the presence of and to Officer Lenker following a request for counsel. In its order, the district court held: "The motion to suppress the Defendant's statements is sustained as to any response to questions by Officer Lenker while he and the

Defendant were in a police cruiser in front of the Defendant's apartment during the course of the second search . . . ." The court went on to say in an explanatory memorandum that "the request for counsel is too proximate in time to the visit in the squad car to permit into evidence any statements of the Defendant except those voluntarily made." The court then cited *Arizona v. Roberson,* 486 U.S. 675, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988), and *State v. Joy,* 218 Neb. 310, 353 N.W.2d 23 (1984).

In *Arizona v. Roberson, supra,* the Supreme Court reaffirmed its prior holding in *Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), wherein it held that a suspect, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." The Court observed in *Roberson* that if after a request for counsel is made the interrogation continues, then " 'a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' " 486 U.S. at 680 (quoting *Miranda, supra*). The holding of *State v. Joy, supra,* is consistent with the above discussion in *Roberson.*

Again we are handicapped by the failure of the record to specify what was said to whom and when. From this void of essential facts the State, in its opening brief, is asking us to draw the conclusion that the entire conversation was initiated by the defendant and every statement made therein was voluntary and admissible.

In its reply brief, the State specifically mentions only the statements made by defendant to Carolyn White and statements concerning the polygraph. With respect to the statements concerning the polygraph, the brief states: "The State agrees that any conversation relating to the polygraph test would not be admissible at trial and does not intend to offer such evidence." Reply brief for appellant at 2. The reply brief then went on to assert that statements made to White should

not be suppressed.

During oral argument, the State said that the only statements it sought to admit into evidence were those made by the defendant to White. The order nunc pro tunc entered by the district court, as well as its memorandum, appears to limit suppression to statements made by the defendant in response to questions asked by Officer Lenker. Consequently, it is apparent that the statements made to White were not suppressed, and the State has abandoned its assertion of error as to the other statements. The end result is that there is no error to correct—the statements made to White are not suppressed, and the State has elected not to pursue the admissibility of other statements made to the officer.

The fourth assignment of error relates to the suppression of statements given by the defendant during an interview by Officer Skanes following the polygraph examination. Defendant stated that after the polygraph he was under the impression he could go home. Instead, he was taken to an interrogation room and was left by himself. When defendant asked why he could not go home, Officer Skanes simply walked away. Defendant said Skanes eventually told him that he was to remain in the room until Sergeant Fricke returned. Officer Skanes also admitted that pursuant to Sergeant Fricke's instructions, the defendant was not to leave the police station.

By this time the defendant was a murder suspect. In comparison to the polygraph test, this interrogation took place in a different room and was conducted by a different officer. Defendant did not initiate this interrogation. He was not read the *Miranda* warnings, although Officer Skanes made reference to the warnings which were given to the defendant before the polygraph and told defendant that they still applied.

The question is not whether additional warnings must be given a defendant every time a different officer begins to question such defendant. Rather, the issue is whether the defendant's desire to have counsel present as expressed the day before must be "scrupulously honored." *In re Interest of Durand. State v. Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980). Even assuming for the sake of argument that defendant did initiate the discussion regarding the polygraph

examination, it was not his idea to engage in a separate and additional interrogation by a different officer. The continuation of uncounseled custodial interrogation after a defendant has invoked the right to counsel would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning that would undermine the will of the person being questioned. *Michigan v. Mosley*, 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975). The district court was correct in suppressing the statements resulting from that last interrogation.

Finally, the third assignment of error relates to the action of the trial court in suppressing any statements made by the defendant during the polygraph examination. The district court found no constitutional defects, but as noted earlier excluded the statements under § 27-403.

There is no question that under the decisions of this court, the results of a polygraph test are inadmissible. See, *State v. Beach*, 215 Neb. 213, 337 N.W.2d 772 (1983); *State v. Vrchota*, 212 Neb. 567, 324 N.W.2d 394 (1982); *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981).

In all three of these cases, the mention of a polygraph test was inadvertent and unrequested; the results of the tests were not disclosed; the references were properly objected to; and the trial court instructed the jury to disregard the references to the polygraph tests. In none of these cases was the reference to the polygraph test found to be prejudicial.

*Wyrick v. Fields*, 459 U.S. 42, 48, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982), in an unnumbered footnote stated: "Although the results of the polygraph examination might not have been admissible evidence, the statements . . . made in response to questioning during the course of the polygraph examination surely would have been."

It would appear that the district court should not have suppressed statements made during the polygraph examination based on its reasoning given, and to that extent its order is reversed. The balance of the suppression order is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.